# IN THE OREGON TAX COURT

## CROCKER EQUIPMENT LEASING, INC.
*v.*
## DEPARTMENT OF REVENUE
(TC 2973)

Roy E. Crawford, Brobeck Phleger & Harrison, San Franciso, California, represented plaintiff.

Marilyn J. Harbur, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision for plaintiff rendered March 12, 1991.

**CARL N. BYERS, Judge.**

Plaintiff appeals its Oregon corporate excise taxes for the years 1978 through 1980. During those years, plaintiff, a California corporation, engaged in the business of owning, leasing and financing tangible personal property. Plaintiff was a 100-percent-owned subsidiary of Crocker National Bank, a United States Chartered National Bank headquartered in California. Crocker National Bank was, in turn, a subsidiary of Crocker National Corporation (Crocker), a Delaware holding company. Crocker National Bank and its subsidiaries, including plaintiff, engaged in the business of banking as authorized by 12 USC § 24 (Seventh) (1933).

Plaintiff was the only Crocker subsidiary engaged in business in Oregon. Accordingly, plaintiff filed its returns as a separate corporation. After audit, defendant determined plaintiff was part of a unitary business headed by Crocker.[1] Plaintiff agreed to file on a unitary basis, apportioning part of plaintiff's share of Crocker's unitary income to Oregon. Plaintiff furnished defendant with copies of its California returns, which had reported its income on a unitary basis. As permitted by California, those returns included intangible property in the apportionment formula. Defendant used the California returns, but excluded intangibles from the property factor.

Plaintiff's business consisted of financing for lease a broad spectrum of tangible personal property. Plaintiff had no office, telephone or mail drop in Oregon. All leases were signed in California, all credit decisions were made in California, all appraisals of property were made in California, all funds were advanced in California, all administration was performed in California and all payments were received in California. The only business connection plaintiff had with Oregon was the presence of leased property in the state.

In 1980,[2] the original cost of leased property owned by plaintiff located in Oregon was $5,977,672. Rental receipts

---

[1] For convenience, the court will refer to the entire unitary business as Crocker.

[2] In this opinion, the court will use the 1980 year for purposes of analysis. The other two years are comparable.

received in that year were $1,142,757. In addition, plaintiff received interest on installment sale contracts from Oregon customers in the amount of $195,913. Defendant determined plaintiff's apportioned net income for Oregon in 1980 was $295,701, resulting in a tax of $22,178. Plaintiff contends intangibles should be included in the property factor. If the property factor included intangible property, plaintiff's apportioned net income in Oregon would be $48,759, resulting in a tax of $3,657 in 1980. Inclusion of intangibles changes the property factor from .502 percent to .033 percent. Because the three factors are averaged, this changes the overall factor for Oregon from .188 percent to .031 percent.

Two points must be kept in mind. First, analysis of the apportionment issue must consider Crocker's entire unitary banking business. Plaintiff is only a small part of that business. Second, the court must apply the statutes and rules in effect during the years 1978 through 1980.

As a financial institution, Crocker is expressly excluded from the Uniform Division of Income for Tax Purposes Act (UDITPA). ORS 314.615. UDITPA was designed for mercantile and manufacturing businesses. The Oregon legislature provided for apportionment of net income of financial institutions by separate statute. ORS 314.280(1) provides:

"If a taxpayer has income from business activity as a financial organization or as a public utility * * * which is taxable both within and without this state (as defined in subsection (8) of ORS 314.610 and in ORS 314.615), the determination of net income shall be based upon the business activity within the state, and the department shall have power to permit or require either the segregated method of reporting or the apportionment method of reporting, under rules and regulations adopted by the department, so as fairly and accurately to reflect the net income of the business done within the state."

Although ostensibly excluded from UDITPA, UDITPA's basic procedures and rules apply to financial institutions. Many of the statutes and rules of UDITPA are incorporated by reference into the Oregon Administrative Rules for ORS 314.280.[3] The major difference from UDITPA

---

[3] For example, OAR 150-314.280-(B) through OAR 150-314.280-(F) adopt by reference a number of the statutes and administrative rules of UDITPA.

is the use of "gross revenue" in place of "sales." There appears to be more emphasis on "net income" in ORS 314.280 than in UDITPA. Nevertheless, the same tests should be used in determining whether the three-factor formula fairly reflects the income and business activity of the taxpayer. Specifically, OAR 150-314.280-(I) expressly adopts by reference OAR 150-314.670-(A). That rule recites the language of ORS 314.670, and acknowledges the three-factor formula may not be appropriate for all businesses.

■       The conditions which permit variance from the three-factor formula are set out by the Supreme Court in *Twentieth Century Fox Film v. Dept. of Rev.,* 299 Or 220, 233-34, 700 P2d 1035 (1985). The court there stated:

> "Two things must be proved.
>
> "First, department [or taxpayer] must demonstrate that the statutory formula as a whole does not 'fairly represent the extent of the taxpayer's business activity in this state.'
> * * *
>
> "Second, the party with the burden of proof must establish that its alternative method of allocating income is 'reasonable.' We believe that in the context of UDITPA, reasonableness has at least three components: (1) the division of income fairly represents business activity and if applied uniformly would result in taxation of no more *or* no less than 100 percent of taxpayer's income; (2) the division of income does not create or foster lack of uniformity among UDITPA jurisdictions; and (3) the division of income reflects the economic reality of the business activity engaged in by the taxpayer in Oregon."

In *Twentieth Century Fox,* the parties agreed on all factors except the property factor. The state asserted that tangible property (film prints) in Oregon should reflect a proportionate share of the value of film negatives located in California. This position recognized the dependent relationship between film prints and film negatives. The state argued that inclusion of the negatives in the overall denominator but not in the Oregon numerator resulted in distortion. The Supreme Court agreed and allowed the state to modify the traditional three-factor formula.

In this case, the parties also agree on all factors except the property factor. Plaintiff maintains intangible

property must be included in the property factor to avoid distortion. Plaintiff's position is grounded on the nature of the unitary business. Crocker's business is banking. Its basic function is to loan money on which it earns interest. Plaintiff leases equipment as an alternative form of financing. Hence, including tangible property (leased equipment) but excluding intangible property (loans), in plaintiff's view, results in distortion. Plaintiff points out that 98 percent of Crocker's earning assets are intangibles. Leased equipment is only 1.8 percent of those assets. Crocker's total tangible property of every kind constitutes only 2.85 percent of its total assets. Plaintiff argues that, by virtue of the nature of Crocker's business, its income is earned in direct relationship to its assets. Exclusion of intangibles from the property factor results in an unrealistic and disproportionate allocation.

In addition, plaintiff argues that accounting rules exaggerate the revenues apportioned to Oregon by the gross revenue factor. For loans, only interest is reported as gross revenue. Repayment of the principal of a loan is not included as revenue. However, for leases, the total lease payment is shown as gross revenue even though most of a lease payment constitutes repayment of principal. Thus, plaintiff contends reported lease income should not be compared with income from loans because it exaggerates Oregon's influence in the market.

While there may be some exaggeration or distortion due to accounting rules, that alone would not justify modifying the three-factor formula. The very reason for a formula is the impossibility of segregating all elements of earnings. Further, there may be grounds for attributing more income to a leasing arrangement than to a loan arrangement. Although all lease administration occurs in California, that does not diminish the government benefits or obligations to the tangible leased equipment located in Oregon.

■ A more significant problem is the effect of averaging three disproportionate factors to arrive at an overall factor. Averaging the three factors (payroll, gross revenue, and tangible property) without weighting them attributes one-third of the unitary business earning power to tangible

property.[4] This assumption is not reflective of economic realities. To give less than three percent of a taxpayer's total assets one-third of the weight should raise serious questions for any business. However, when the business is a financial institution earning income from use of its capital, apportioning income on the basis of only a small portion of its capital suggests unfairness. The factors used to apportion income must provide a relationship between the income attributed to the state and the intrastate values of the enterprise. *Exxon Corp. v. Wisconsin Dept. of Revenue,* 447 US 207, 100 S Ct 2109, 65 L Ed 2d 66 (1980).

Defendant contends that using only tangible property does not produce a disproportionate result because the gross revenue factor reflects the interest income earned by intangibles. However, the gross revenue factor is only one-third of the equation. "Some" representation does not eliminate disproportionate representation. The statutory formula assumes that tangible property, which is only 2.85 percent of the total assets, earns one-third of the income. This is out of all proportion to economic realities.

It is the business activity of plaintiff in the state that provides the basis for the state imposing a tax. *Container Corp. v. Franchise Tax Bd.,* 463 US 159, 103 S Ct 2933, 77 L Ed 2d 545 (1983). The unitary income which is being apportioned is the income of a large bank, 98 percent of which is attributable to loans or intangible property. The court finds that use of only tangible property in the property factor in this case results in a disproportionate apportionment of income to Oregon.

Plaintiff must demonstrate that its alternative of including intangibles in the property factor is "reasonable." Plaintiff argues it is reasonable because it reduces the proportion of taxable income from .188 percent to .031 percent. Plaintiff contends this places tangible property in its appropriate relationship to the whole unitary business. This approach would not tax more than 100 percent of the income

---

[4]

"Thus, a three-factor property-payroll-sales formula in a net income tax statute has the built-in assumption that one-third of the net income is derived from the use of property, one-third from services and one-third from selling." W. Beaman, *Paying Taxes To Other States* 3.15 (1963).

if all states applied the same approach. Also, this approach is consistent with the State of California, where plaintiff is headquartered.

Distortion is not proved by comparing results. To determine whether there is distortion, the analysis must focus on the relationship between the apportionment factors and taxpayer's business activity producing the taxable income. In this case, plaintiff earns income by loaning capital. The amount of leased equipment represents an equivalent loan of capital. A loan of $100,000 secured by equipment is not economically different from financing $100,000 of leased equipment. The function is the same.

Measuring income by factors which are unrelated to the production of income can result in unfair apportionments. The unfair apportionment can attribute too little, as well as too much, income to a state. In this case, using only tangible property in the property factor tends to distort the apportionment formula. One alternative is to eliminate the property factor altogether. This would be done on the rationale that an asset which is less than three percent of a taxpayer's total assets is too small to reflect its business activities on a proportionate basis. If the property factor is eliminated, this leaves a payroll factor of zero percent and a gross revenue factor of .061 percent, or an average (overall) apportionment factor of .0305 percent.

Plaintiff's proposed solution is to include intangibles in the property factor. This proposal rests on the rationale that both intangibles and tangibles represent capital. More important, while intangibles in many businesses produce nonbusiness income, the very nature of Crocker's business is to earn business income from intangibles. Consequently, a combination of tangibles and intangibles accurately reflects one of the factors indicative of Crocker's business activity.

By including intangibles in the property factor, the three factors then result in an overall apportionment factor of .031 percent. The small difference between .031 percent and a two-factor formula of payroll and gross revenue (.0305 percent) suggests that tangible property is not a good measure of Crocker's business activity. This seems verified by the relative proportions of the amounts involved. Oregon leased

equipment ($5,977,672) constitutes only 2.36 percent of all leased equipment ($253,800,000). Further, all leased equipment constitutes only 1.8 percent of all earning assets ($14,107,200,000). In other words, Oregon leased equipment constituted only .04 of one percent of plaintiff's earning assets. Yet, using only tangible property in the property factor attributes .188 percent of the income to Oregon.

The court finds plaintiff's alternative of including intangibles in the property factor is "reasonable." It is more likely to produce an accurate result than the use of only gross revenues and payroll. Moreover, although leased equipment is a very small part of Crocker's unitary business, it represents all of plaintiff's business activity in Oregon. Consequently, it should be included in a formula that gives appropriate weight to the relevant factors. The proper role of leased equipment can be adequately and fairly reflected in the property factor if intangibles are included in the factor. By including intangibles, an average of the three factors fairly relates the apportioned income to the services provided by this state. *Complete Auto Transit, Inc. v. Brady,* 430 US 274, 97 S Ct 1976, 51 L Ed 2d 326 (1977).

The court finds including intangibles in the property factor results in an apportionment which fairly and accurately reflects plaintiff's business activity within the state. The parties have stipulated to the income and tax when intangibles are included in the property factor. Plaintiff is entitled to a refund. Defendant shall calculate the amount of the refund for each year and submit such calculations to this court in accordance with Rule 65. Plaintiff to recover costs.